1
2
3
4
5
6
7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WAYNE D. SMITH,                          No.  2:13-cv-1830 TLN AC PS

12              Plaintiff,

13        v.                                  ORDER AND

14   AZIZ SHARIAT, ET AL.,                    FINDINGS & RECOMMENDATIONS

15              Defendants.

16

17        Pending before the court is defendant Lee Vining's May 12, 2014 motion to dismiss,

18   defendant Linda Hilts and Evergreen MGA's May 12, 2014 motion to dismiss, and defendant

19   Aziz Shariat's May 14, 2014 motion to dismiss, all set for hearing on June 18, 2014.  The court

20   has determined that these matters shall be submitted upon the record and briefs on file and

21   accordingly, the date for hearing shall be vacated.  E.D. Local Rule 230.  On review of the

22   motions and the documents filed in support and opposition, THE COURT FINDS AS

23   FOLLOWS:

24                        RELEVANT FACTUAL ALLEGATIONS

25        Plaintiff's Second Amended Complaint ("SAC") suffers from the same lack of clarity as

26   his previous pleadings.  Invoking this Court's jurisdiction pursuant to, inter alia, the First, Fourth

27   and Fifth Amendments of the United States Constitution, the Americans with Disabilities Act

28   ("ADA"), 42 U.S.C. §12101 et seq., the Racketeering Influenced and Corrupt Organization Act

                                          1

1  ("RICO"), 18 U.S.C. §§ 1961-1968, and 18 U.S.C. § 201 (which relates to the bribery of public

2  officials and witnesses), plaintiff brings suit against a number defendants for various wrongs that

3  are not entirely clear, even upon multiple readings of the SAC.

4       Plaintiff's allegations appear to stem from a work contract he entered into on or around

5  October 5, 2011 with Don Bagwell, the then-manager of the Chiquita Family Camp Ground and

6  RV Park ("Camp Chiquita"). On December 2, 2011, plaintiff moved into Camp Chiquita at

7  Space #16, a space he occupied until April 30, 2012. SAC at 7 ¶¶ 9, 9(a). Pursuant to his

8  contract with Bagwell, plaintiff performed work that included "investigations of Camp ground

9  resident[s], Drug dealers and use thereof." SAC at 7 ¶ 9(a). During the course of his work,

10 plaintiff found that electrical meters were being "padd[ed]." Id. at 9 ¶ 16. Plaintiff "reported

11 every discrepancy, discovered At (The Camp), to all Parties, including Illegal, activities,

12 allegations, of (R.I.C.O.), illegal, sales of firearms, Drug sales, and Grow operations, and the

13 various documented violations of State and County Ordinances." Id. at 10 ¶ 17. In exchange for

14 this work, plaintiff was to be paid $1,690.00 per month. Id. at 9 ¶ 16, 18 ¶ 64.

15      Following Bagwell's death in late-2011, a Camp Chiquita flyer was distributed nullifying

16 all verbal agreements between Bagwell and Camp Chiquita residents. SAC at 11 ¶ 25. Plaintiff

17 claims that he continued to perform work under the contract until his eviction in February 2013,

18 but that he was never paid for his services. Plaintiff claims that this was a breach of implied

19 contract.

20      Plaintiff also accuses the owner of Camp Chiquita, Aziz Shariat, of conspiring with

21 unnamed individuals to pad the electricity meters for profit and then of retaliating against plaintiff

22 when the latter reported and attempted to correct the padding. SAC at 7 ¶ 10, 10 ¶ 20. On

23 January 10, 2013, Shariat approached Space #17, where plaintiff then resided, and said, "GET

24 OUT, LEAVE THE PARK TODAY, OR I WILL CUT YOUR BALL'S [sic] OFF." Id. at 8 ¶

25 11(A). Plaintiff claims he was illegally evicted on February 4, 2013. Id. at 11 ¶ 28.

26      Per plaintiff, "Defendants, Et, AL" participated in "a system of vicious harassment,

27 discrimination practices, and Bad Faith dealings, and Fraudulent, Promissory estoppel," and

28 "Acted With Deliberate Indifference, and failure to give the Plaintiff procedural Due Process" by

2

1  falsifying utility bills and creating false reports that plaintiff was in violation of Camp Chiquita

2  rules. SAC at 9 ¶ 14. Plaintiff claims that he was a law-abiding resident of Camp Chiquita, but

3  that he was targeted by defendants, even though other residents who were participating in illegal

4  activity at the campground were not evicted or arrested. See, e.g., id. at 10 ¶¶ 21-22.

5  　　　On July 3 (or August 3), 2012, plaintiff's home was burglarized by a former resident of

6  Camp Chiquita. SAC at 11 ¶ 30, 13 ¶ 39. Plaintiff accuses five on-site managers of being aware

7  of an open security gate and of witnessing the burglary. Id. at 11 ¶ 30. He also accuses El

8  Dorado County Sheriff's Deputies Gennai and Funk of responding to this burglary days after the

9  fact, id. at 13 ¶ 40, and of failing to gather information or interview witnesses, id. at 14 ¶ 42.

10  Plaintiff accuses these defendants of violating his Due Process rights.

11  　　　Following the burglary, plaintiff filed a claim against Camp Chiquita's insurance

12  company. SAC at 14 ¶ 44. He accuses insurance agents Lee Vining and Linda Hilts of acting in

13  bad faith and of discriminating against plaintiff by conspiring to cover up the facts of the

14  burglary. Id. In support of this claim, plaintiff relies solely on these defendants' denial of

15  plaintiff's insurance claims. See id. at 14 ¶ 45.

16  　　　Plaintiff also asserts that he was discriminated against because of his religion. In support,

17  plaintiff asserts that after "Defendants Et, Al" learned that he is a practicing Christian, they

18  treated him differently. SAC at 7 ¶ 11. Plaintiff accuses Shariat of approaching him on March

19  16, 2014 during a scheduled church service at Camp Chiquita (after plaintiff's eviction from the

20  campground) and saying, "You are not allowed here, at [The Camp], get Out, or You Will Be

21  Arrested." Id. at 8 ¶ 12. Plaintiff claims this was in violation of his First Amendment rights.

22  　　　In sum, plaintiff asserts that all defendants acted under color of state law; that all are

23  vicariously liable for Shariat's actions; that all of the defendants' actions constitute a custom,

24  practice and policy of deliberate indifference; that he was discriminated against on account of his

25  disability; and that the defendants deprived plaintiff of his right to practice his religion.

26  　　　　　　　　　　　　　　PROCEDURAL BACKGROUND

27  　　　Plaintiff initiated this action on September 4, 2013. On September 12, 2013, the

28  undersigned granted plaintiff's request to proceed in forma pauperis and screened the complaint,

1    finding it to be so vague and conclusory that the court was unable to determine whether the action

2    was frivolous or failed to state a claim.  The complaint was therefore dismissed and plaintiff was

3    directed to file an amended complaint.

4         On October 15, 2013, plaintiff filed a First Amended Complaint ("FAC") naming Officers

5    Gennai and Funk; Aziz Shariat, as the owner / operator of Camp Chaquita "aka Yanasa, Inc.";

6    Larry Saunders "aka Georgetown Mini, Storage"; Vining Insurance and Business Consultants dba

7    Frontier Adjusters of Sacramento ("Frontier Adjusters") (erroneously sued as "Lee Vining aka

8    Frontier Adjustments of Sacramento"); and Linda Hilts of Evergreen Insurance Company ("Hilts

9    and Evergreen").

10        Before the Court could screen the FAC, plaintiff served all defendants by mail.  See ECF

11    No. 5.  Thereafter, defendants Shariat, Frontier Adjusters, and Hilts and Evergreen filed separate

12    motions to dismiss.  ECF Nos. 6, 11, 16.  On review of these motions, the Court found plaintiff's

13    pleading to be in violation of Federal Rule of Civil Procedure 8(a)(1) and (2).  Thus, the FAC was

14    dismissed with leave to amend.

15        On April 28, 2014, plaintiff filed the operative SAC.  ECF No. 20.  Plaintiff again names

16    Officers Gennai and Funk, Shariat, Frontier Adjusters, and Hilts and Evergreen.  Pending before

17    the Court are three motions to dismiss filed again by Frontier Adjusters, Hilts and Evergreen, and

18    Shariat.  ECF Nos. 21-23.  Plaintiff opposes the motions.

19                                        LEGAL STANDARDS

20        The purpose of a motion to dismiss pursuant to this rule is to test the legal sufficiency of

21    the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).

22    "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts

23    alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

24    (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is

25    plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, a

26    defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the

27    plaintiff's claims, even if the plaintiff's allegations are true.

28        In determining whether a complaint states a claim on which relief may be granted, the

4

court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

The court may consider facts established by exhibits attached to the complaint.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987), and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).  The court need not accept legal conclusions "cast in the form of factual allegations."  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

DISCUSSION

A.     Frontier Adjusters' Motion to Dismiss

Defendant Frontier Adjusters moves to dismiss the SAC on the following grounds: (1) failure to timely serve complaint pursuant to Rule 4(m) of the Federal Rules of Civil Procedure; (2) insufficient service of process pursuant to Rule 12(b)(5); (3) insufficient process pursuant to Rule 12(b)(4); and (4) failure to state a claim pursuant to Rule 12(b)(6).

1.     Improper Service

As for Frontier Adjusters' ground for dismissal based on insufficiency of process, "service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served."  Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 444-45 (1946).  "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987).  Accordingly, Rules 12(b)(4) and 12(b)(5) permit a court to dismiss an action for insufficiency of service of process.  Fed. R. Civ. P. 12(b)(4)-(5).  Rule 12(b)(4) enables the defendant to challenge the substance and form of the summons, and 12(b)(5) allows the defendant to attack the manner in which service was, or was not, attempted.  Id.  When the validity of service is contested, the burden is on the plaintiff to prove that service was valid under Rule 4.  Brockmeyer v. May, 383

5

1   F.3d 798, 801 (9th Cir. 2004).  If the plaintiff is unable to satisfy this burden, the Court has the

2   discretion to either dismiss the action or retain the action and quash the service of process.

3   Stevens v. Sec. Pac. Nat'l Bank, 538 F.2d 1387, 1389 (9th Cir. 1976).

4        Rule 4(a)(1) sets forth the requirements for the form of a summons, including that it name

5   the court and the parties, be directed to the defendant, state the name and address of plaintiff, be

6   signed by the clerk, and bear the clerk's seal.  Fed. R. Civ. P. 4(a)(1).  "Dismissals for defects in

7   the form of summons are generally disfavored."  U.S.A. Nutrasource, Inc. v. CNA Ins. Co., 140

8   F. Supp. 2d 1049, 1052 (N.D. Cal. 2001).  "Technical defects in a summons do not justify

9   dismissal unless a party is able to demonstrate actual prejudice."  Chan v. Society Expeditions, 39

10  F.3d 1398, 1404 (9th Cir. 1994).  In addition, "[e]ven if the summons fails to name all of the

11  defendants . . . dismissal is generally not justified absent a showing of prejudice."  United Food &

12  Commercial Workers Union, Locals 197, et al. v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir.

13  1984) (internal citations omitted) ("Rule 4 is a flexible rule that should be liberally construed so

14  long as a party receives sufficient notice of the complaint.").

15       Rule 4 also sets forth the requirements for the manner of service.  As relevant here, Rule

16  4(h) provides that a corporation or other unincorporated association may be served either in the

17  manner prescribed for serving an individual, see Rule 4(e)(1), or by delivering a copy of the

18  summons and complaint to an agent authorized to receive service.  Fed. R. Civ. P. 4(h).  An

19  individual may be served by, inter alia, personally delivering a copy of the summons and a

20  complaint, leaving a copy of each at the individual's usual place of abode, or delivering a copy of

21  each to an agent authorized to receive service.  Fed. R. Civ. P. 4(e)(2).  Again, once the adequacy

22  of service is challenged, the plaintiff bears the burden of establishing that service was valid.

23  Brockmeyer, 383 F.3d at 801.

24       In addition to the foregoing, Rule 4 lays out the time frame within which service must be

25  accomplished:

26          If a defendant is not served within 120 days after the complaint is
            filed, the court—on motion or on its own after notice to the
27          plaintiff—must dismiss the action without prejudice against that
            defendant or order that service be made within a specified time. But
28          if the plaintiff shows good cause for the failure, the court must

1   extend the time for service for an appropriate period. [ . . . ]

2   Fed. R. Civ. P. 4(m).  Where service is untimely, Rule 4(m) requires a district court to grant an

3   extension of time for service when the plaintiff shows good cause for the delay in service.  Efaw

4   v. Williams, 473 F.3d 1038, 1040 (9th Cir. 2007).  In the absence of good cause, the rule permits

5   the district court to grant an extension upon a showing of excusable neglect.  Id.  See also

6   Lemoge v. United States, 587 F.3d 1188, 1198 (9th Cir. 2009).  The plaintiff, of course, bears the

7   burden of showing the existence of good cause or excusable neglect warranting an extension.

8   Habib v. General Motors Corp., 15 F.3d 72, 73 (6th Cir. 1994); McCormack v. City and County

9   of Honolulu, 2011 WL 6934710, at *4 (D. Haw. 2011).

10      Here, plaintiff commenced this action on September 4, 2013, and first named Frontier

11  Adjusters as a defendant in the FAC filed on October 15, 2013.  Therefore, the 120-day period for

12  effecting service of that pleading on this defendant expired on February 12, 2014.  Fed. R. Civ. P.

13  6(a)(1).  On December 27, 2013, plaintiff mailed the FAC and accompanying documents

14  purportedly to all defendants, including Lee Vining of Frontier Adjusters.  See ECF No. 5.  The

15  Summons, though, is almost entirely blank but for the caption of this case, and, in the space

16  provided to list the defendant, includes only the following line: "AZIZ SHARIAT, ET AL.; List

17  of Defendants attach."  See id. at 4.  Lacking many of the requirements established by Rule

18  4(a)(1), the Court finds the summons to be defective.

19      Vining received the FAC and accompanying documents by regular U.S. mail on or about

20  January 6, 2014.  Decl. of Lee Vining ¶ 3, Ex. 1.  Vining did not receive a Summons, he never

21  signed or returned the "Waiver of the Service of Summons," which itself was unsigned and

22  undated, he has never been personally served with any documents, and to date he has not been

23  served with the SAC.  Id. ¶¶ 4-6.  Thus, service also suffers from insufficiency and untimeliness.

24      Plaintiff offers no argument in opposition to this defendant's motion to dismiss.  See ECF

25  No. 25.  Instead, he submits over 150-pages of exhibits, none of which establishes that either Lee

26  Vining or Frontier Adjusters has been properly and/or timely served.  See ECF No. 28.  In light of

27  plaintiff's failure to meet his burden to show the existence of good cause or excusable neglect in

28  failing to properly and timely serve, the Court will recommend that Frontier Adjusters' Motion to

1   Dismiss be granted and this action be dismissed against it.

2        2.        Failure to State a Claim

3        Alternatively, the Court finds the SAC subject to dismissal against this defendant for

4   failure to state a claim.  The gravamen of plaintiff's claim is that Frontier Adjusters improperly

5   denied an insurance claim filed by plaintiff for losses incurred following the July (or August)

6   2012 burglary.  The only facts alleged as to this defendant are:

> Defendant Lee Vining, the Independent liability investigator for
> Evergreen MGA, aka Adjustor, Claim writer and/or administrator,
> Known as Linda Hilts, operated in Bad Faith and dealing Practices,
> for their Insured (The Camp), Discriminated against the Plaintiff,
> by way of Legal cause & Fact, That Defendant Vining in His
> Person did Conspire to Cover up the Full Faith Facts an [sic]
> Knowledge availed, to Him in a Conspiracy to Deny the Plaintiff
> His Claim against their Insured (The Camp).

12   SAC at 14 ¶ 44.  As is evident, the only wrong alleged is this defendant's denial of plaintiff's

13   insurance claim.  But plaintiff readily admits that Frontier Adjusters insured Camp Chiquita, not

14   him.  Additionally, it is unclear how the mere fact that this defendant denied plaintiff's insurance

15   claim gives rise to a violation of plaintiff's constitutional or federal rights or constitutes a breach

16   of an implied contract or promissory estoppel.  Although pro se pleadings are liberally construed,

17   Haines v. Kerner, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support

18   a cause of action.  Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir.

19   1982).

20        Given these serious deficiencies in the SAC, and given plaintiff's failure to comply with

21   this Court's instructions for amending his complaint, this Court finds it appropriate to recommend

22   dismissal of the SAC complaint against this defendant with prejudice for failure to comply with

23   Federal Rule of Civil Procedure 8(a) and for failure to state a claim under Federal Rule of Civil

24   Procedure 12(b)(6).  Plaintiff has twice amended his complaint, both times with explicit

25   instructions from this Court about complying with Rule 8(a).  Though the SAC is in some ways

26   an improvement, it is still far from a clear, intelligible, "short and plain" statement of his claims.

27   Plaintiff failed to follow even relatively straightforward instructions, such as specifying which

28   claims are alleged against which defendants.  Instead, plaintiff persists in pleading claims against

8

1    "Defendants, Et, AL."  Moreover, further amendment would be futile, as improved clarity of

2    pleading regarding the denied insurance claim could not conceivably state a legal claim against

3    Frontier Adjusters under 42 U.S.C § 1983 or RICO.  See Gompper v. VISX, Inc., 298 F.3d 893,

4    898 (9th Cir. 2002) (leave to amend need not be granted where amendment would be futile).

5    Accordingly, the Court will recommend that this motion be granted and the claims against

6    Frontier be dismissed with prejudice.

7            3.      Lack of Subject Matter Jurisdiction

8            Although Frontier Adjusters does not raise the issue of subject matter jurisdiction, this

9    court may raise the issue sua sponte.  Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002).

10   The "presence or absence of federal-question jurisdiction is governed by the 'well-pleaded

11   complaint rule,' which provides that federal jurisdiction exists only when a federal question is

12   presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar, Inc. v. Williams,

13   482 U.S. 386, 392 (1987).  For the reasons explained below in discussion of the other defendants'

14   motions, the complaint does not support subject matter jurisdiction over the claims against

15   Frontier Adjusters.  This conclusion further supports dismissal with prejudice.

16   B.      Hilts and Evergreen's Motion to Dismiss

17           1.      Improper Service

18           In their motion to dismiss, Hilts and Evergreen raise the same arguments as Frontier

19   Adjusters regarding plaintiff's failure to properly and timely serve.  Because the facts related to

20   service are identical for these defendants, the undersigned will also recommend that Hilts and

21   Evergreen's motion to dismiss be granted for failure to serve process in accordance with the

22   Federal Rules of Civil Procedure.

23           2.      Failure to State a Claim

24           Alternatively, the SAC should be dismissed for failure to state a claim.  Similar to his

25   claim against Frontier Adjusters, plaintiff accuses Hilts and Evergreen of acting with "Malice and

26   Forethought" in "withhold[ing] Proper Information as revealed by the State of California Dept.;

27   Of Insurance, and dealt with the Plaintiff in Bad Faith, when, acting consistently denying Plaintiff

28   Claims For Losses incurred by their insured (The Camp) . . . ."  SAC at 14 ¶ 45.  Plaintiff's vague

9

1   and conclusory claims against these defendants are subject dismissal with prejudice for the same

2   reasons as discussed on consideration of Frontier Adjusters' motion to dismiss.  That is, other

3   than asserting that these defendants denied his insurance claim, plaintiff fails to proffer any facts

4   supporting a claim for a violation of his constitutional or federal rights, breach of an implied

5   contract or promissory estoppel.  Because two opportunities to amend the pleadings have not

6   resulted in a cognizable claim, further leave to amend would be an exercise in futility.

7           3.      Lack of Subject Matter Jurisdiction

8           Lastly, defendants' motion should be granted for lack of subject matter jurisdiction.

9   Federal courts are courts of limited jurisdiction, and are presumptively without jurisdiction over

10   civil actions.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  The burden

11   of establishing the contrary rests upon the party asserting jurisdiction.  Id.  Here, although

12   plaintiff lists an array of federal statutes and constitutional provisions, it is unclear how Hilts and

13   Evergreen's denial of plaintiff's insurance claim amounts to, for example, a civil rights violation,

14   42 U.S.C. § 1983; employment discrimination on the basis of disability, 42 U.S.C. § 12117;

15   employment discrimination for participation in enforcement proceedings, 42 U.S.C. § 2000e-3; or

16   a RICO violation.

17   C.      Shariat's Motion to Dismiss

18           Defendant Shariat moves to dismiss this action for failure to provide a short and plain

19   statement pursuant to Rule 8(a)(2), failure to establish federal subject matter jurisdiction pursuant

20   to Rule 8(a)(1), and failure to state a claim pursuant to Rule 12(b)(6).

21           As the Court indicated in recounting plaintiff's factual allegations, the SAC is hardly a

22   model of clarity.  This raises problems not only under Rule 8(a), but also under Rule 12(b)(6).  In

23   considering motions to dismiss under Rule 12(b)(6), a court must take all allegations of material

24   fact as true and construe them in the light most favorable to the nonmoving party, although

25   "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule

26   12(b)(6) dismissal."  Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a

27   complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a

28   claim to relief that is plausible on its face.'"  Id.  "A claim has facial plausibility when the

1   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

2   defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see

3   also Bell Atl. Corp v. Twombly, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin

4   to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted

5   unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  A court may dismiss as

6   frivolous, claims that are clearly baseless, fanciful, fantastic, or delusional. Denton v. Hernandez,

7   504 U.S. 25, 32-33 (1992).

8        Additionally, "[f]ederal district courts are courts of limited jurisdiction, possessing only

9   that power authorized by Constitution and statute.  We presume that a cause lies outside this

10  limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting

11  jurisdiction." K2 Am. Corp. v. Roland Oil & Gas, LLC, 653 F.3d 1024, 1027 (9th Cir. 2011)

12  (citations and internal marks omitted).

13       Though plaintiff asserts a slew of federal statutes and constitutional provisions, neither the

14  SAC nor the opposition states a legally cognizable ground for the Court to exercise jurisdiction

15  over plaintiff's allegations.  Plaintiff, for example, brings numerous constitutional claims against

16  defendant Shariat  for violations of his constitutional rights, including the First Amendment, the

17  Fourth Amendment, and the Fourteenth Amendment.  To state a claim under 42 U.S.C. § 1983, a

18  plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was

19  violated, and (2) that the alleged violation was committed by a person acting under color of law.

20  As the Ninth Circuit has stated, "private parties are not generally acting under color of state law,

21  and . . . '[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to

22  state a claim under the Civil Rights Act.'" Price v. State of Hawai'i, 939 F.2d 702, 708 (9th Cir.

23  1991) (citing Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984) (citation

24  omitted)).  Other than a conclusory allegation that Shariat is a state actor, plaintiff has provided

25  no facts supporting this allegation.

26       In many places, plaintiff fails to plead any factual basis for his claims.  In others, the facts

27  he pleads are conclusory or of unclear relevance.  For example, though plaintiff alleges that he

28  was discriminated against based on his religion, the complaint contains practically no facts

11

1   indicating the basis for this claim.  He also brings suit under the ADA and 18 U.S.C. § 201, which

2   as previously noted relates to the bribery of public officials and witnesses, but again he provides

3   only conclusory allegations without a sufficient factual basis for either of these claims.  Other

4   allegations are so bizarre as to be entirely implausible.

5          As for plaintiff's RICO claim, plaintiff does not state directly on which provision(s) of

6   RICO this cause of action is based.  In order to state a civil RICO claim, plaintiff must allege

7   facts showing: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity

8   (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property'" ("RICO

9   injury").  Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 361 (9th Cir.

10  2005) (quoting Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir. 1996), in turn citing 18 U.S.C. §§

11  1964(c), 1962(c)).  In order to state a claim for RICO conspiracy, plaintiff must allege that a

12  person conspired to violate section 1962(c), that he suffered RICO injury by reason of overt acts,

13  and that those overt acts constitute predicate acts under the RICO statute, which were in

14  furtherance of the conspiracy.  See, e.g., Reddy v. Litton Indus., Inc., 912 F.2d 291, 295 (9th Cir.

15  1990).

16         "Racketeering activity" is defined to encompass a variety of criminal acts identified in 18

17  U.S.C. § 1961(1).  Sanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010).  To satisfy

18  the "pattern" requirement, there must be at least two acts of racketeering activity within a ten-year

19  time period.  18 U.S.C. § 1961(5).  As an alternative to demonstrating a pattern of racketeering

20  activity, a plaintiff may rely on proof of the collection of an unlawful debt.  See 18 U.S.C. §

21  1962(a)–(c).  RICO defines "unlawful debt" as a debt resulting from illegal "gambling activity"

22  or one that is unenforceable because it is "usurious." 18 U.S.C. § 1961(6); Sundance Land Corp.

23  v. Cmty. First Fed. Sav. & Loan Ass'n, 840 F.2d 653, 665-66 (9th Cir. 1988).

24         Where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on

25  that course of conduct as the basis of a claim[,] . . . the claim is said to be 'grounded in fraud' or

26  to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity

27  requirement of [Federal Rule of Civil Procedure] 9(b)." Vess v. Ciba-Geigy Corp. USA, 317

28  F.3d 1097, 1103-04 (9th Cir. 2003).  To be alleged with particularity, a plaintiff must allege "the

1   who, what, when, where, and how" of the alleged fraudulent conduct, Cooper v. Pickett, 137 F.3d

2   616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission

3   complained of was false and misleading," In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th

4   Cir. 1994) (en banc).  In other words, "the circumstances constituting the alleged fraud [must] be

5   specific enough to give defendants notice of the particular misconduct . . . so that they can defend

6   against the charge and not just deny that they have done anything wrong."  Vess, 317 F.3d at

7   1106 (first alteration supplied; internal quotation and citations omitted).  "Rule 9(b)'s requirement

8   that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall

9   be stated with particularity' applies to civil RICO fraud claims."  Edwards v. Marin Park, Inc.,

10   356 F.3d 1058, 1065-66 (9th Cir. 2004) (internal citation omitted); Moore v. Kayport Package

11   Exp., Inc., 885 F.2d 531, 541 (9th Cir. 1989).

12        In this case, plaintiff asserts that Shariat conspired with unnamed individuals to pad the

13   electricity meters at Camp Chiquita for profit.  Even taken as true, plaintiff has insufficiently pled

14   facts to permit the Court to draw a reasonable inference that this defendant's conduct involved a

15   pattern of racketeering activity, as defined by statute, and has further failed to allege the "who,

16   what, when, where and how" of this claim.  Moreover, the injury claimed is nonsensical: the "loss

17   of Business, known as 'The Spoken Word R&D' 008-TW1, a congressional program and Work

18   rehabilitative program, Plaintiff, (Maximus), Now Known as (Bass) (The Act of Congress

19   1999)."  SAC at 21 ¶ 86.

20        To the extent plaintiff grounds his claims on breach of implied contract and promissory

21   estoppel, he fails to establish the basis of this Court's subject matter jurisdiction.  See 18 U.S.C.

22   §§ 1331-1332.  Even assuming jurisdiction could be established, plaintiff fails to state a claim.

23   To establish breach of implied contract, California law recognizes two varieties of implied

24   contract: contracts are implied in law where "the equitable theory that a contract to pay for

25   services rendered is implied by law for reasons of justice"  Hedging Concepts, Inc. v. First

26   Alliance Mortgage Co., 41 Cal. App. 4th 1410, 1419 (1996)); and, contracts are implied in fact

27   where the parties' actions evince an intention to create a binding contract.  See Weitzenkorn v.

28   Lesser, 40 Cal. 2d 778, 794 (1953) ("The only distinction between an implied-in-fact contract and

1 an express contract is that, in the former, the promise is not expressed in words but is implied

2 from the promisor's conduct").  Unlike quasi-contracts or contracts implied in law, contracts

3 implied in fact reflect the parties' actual intentions.  Id.; see generally Gunther-Wahl Productions,

4 Inc. v. Mattel, Inc., 104 Cal. App. 4th 27, 36-42 (2002) (collecting early cases); see also Montz v.

5 Pilgrim Films & Television, Inc., 649 F.3d 975 (9th Cir. 2011).  To establish promissory estoppel,

6 plaintiff must allege (1) a promise that is clear and unambiguous in its terms; (2) reliance by the

7 party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4)

8 the party asserting the estoppel must be injured by his or her reliance.  See Boon Rawd Trading

9 Int'l Co., Ltd. v. Paleewong Trading Co., Inc. 688 F. Supp. 940, 953 (2010).

10  Plaintiff contends that he entered into a contract with Dan Bagwell in October 2011 that

11 was rescinded by Camp Chiquita management in late-2011 following Bagwell's death.  Plaintiff

12 claims that he continued to perform under the contract for over one year after Bagwell's death,

13 but that defendants breached the *implied* contract by failing to pay him the amount promised

14 ($1,690.00 per month).  Plaintiff, however, also asserts that he entered into a *signed* contract with

15 Bagwell.  See SAC at 20 ¶ 75.  These contradictory allegations do not give defendants fair notice

16 of the basis of plaintiff's claim and are insufficient to establish the elements of either a breach of

17 an implied contract or promissory estoppel claim.  See Fed. R. Civ. P. 8(a)(2); Wyshak v. City

18 Nat'l Bank., 607 F.2d 824, 827 (9th Cir. 1979).

19  Defendant Shariat's motion to dismiss the SAC for failure to comply with the

20 requirements of Rule 8(a) and for failure to state a claim should therefore be granted.

21 D. Screening of SAC as to Deputies Gennai and Funk

22  Also pending before the Court is plaintiff's June 2, 2014 motion for service of the

23 complaint on defendants El Dorado County Sheriff's Deputies Gennai and Funk.  Before ruling

24 on that motion, the undersigned will screen the SAC pursuant to the federal in forma pauperis

25 statute, which authorizes federal courts to dismiss a case if the action is legally "frivolous or

26 malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from

27 a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).

28  In evaluating plaintiff's SAC, this Court must construe it in the light most favorable to the

1    plaintiff and accept as true the factual allegations of the complaint.  <u>Erickson v. Pardus</u>, 551 U.S.

2    89, 93-94 (2007).  This rule does not apply to "'a legal conclusion couched as a factual

3    allegation,'"  <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (quoted in <u>Twombly</u>, 550 U.S. at 555),

4    nor to "allegations that contradict matters properly subject to judicial notice" or to material

5    attached to or incorporated by reference into the complaint.  <u>Sprewell v. Golden State Warriors</u>,

6    266 F.3d 979, 988-89 (9th Cir. 2001).

7             In this case, plaintiff accuses Deputies Gennai and Funk of responding to the burglary of

8    plaintiff's residence thirteen days after the fact and of failing to gather information or interview

9    witnesses.  The Court gleans additional facts from a copy of a report prepared by El Dorado

10   County Sheriff's Deputies Gennai and Funk on August 14, 2012 following their investigation of

11   the burglary.[1]  <u>See</u> ECF No. 28-2 at 13-15.  Per this report, the burglary of plaintiff's residence

12   occurred at some time between August 3 and August 9, 2012, while plaintiff was in Reno,

13   Nevada.  On August 9, 2012, plaintiff received a phone call from Camp Chiquita management

14   informing him that his residence had been broken into.  On August 13, 2012, plaintiff returned

15   home to find that it had indeed been burglarized.  That evening, at approximately 11:10 p.m.,

16   Deputies Gennai and Funk were dispatched to plaintiff's residence.  When they arrived, they

17   spoke to plaintiff and learned that prescription medication and thousands of dollars in cash had

18   been stolen.  Plaintiff suspected Donna Carpenter of the burglary, but the deputies did not attempt

19   to make contact with her both because of the time of night and because of plaintiff's uncertainty

20   about the suspect's whereabouts.

21            Examination of this report leads the Court to conclude that plaintiff's claim against these

22   deputies is subject to dismissal.  This is because the report establishes that Deputies Gennai and

23   _____

24   [1] This report was submitted by plaintiff in opposition to the pending motions to dismiss.  Because
     the SAC depends, in part, upon consideration of this report, it may be considered.  <u>See</u> <u>Lazy Y</u>

25   <u>Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 588 (9th Cir. 2008) (When adjudicating a motion to
     dismiss, a court "need not accept as true allegations contradicting documents that are referenced

26   in the complaint"); <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005) (Consideration of
     materials incorporated by reference in the complaint is permitted when "plaintiff's claim depends

27   on the contents of a document, the defendant attaches the document to its motion to dismiss, and
     the parties do not dispute the authenticity of the document.").  Here, because the report was

28   submitted by plaintiff himself, there can be no dispute concerning its authenticity or its contents.

1    Funk responded to the burglary on the evening of August 13 or the early morning of August 14,

2    2014, immediately (or at least very soon) after plaintiff contacted the El Dorado County Sheriff's

3    Department and not, as plaintiff alleges in the SAC, days after receiving notice.  Moreover, even

4    assuming Deputies Gennai and Funk failed to gather information or interview witnesses, this does

5    not amount to a constitutional violation.  See Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir.

6    2007) ("[W]e can find no instance where the courts have recognized inadequate investigation as

7    sufficient to state a civil rights claim unless there was another recognized constitutional right

8    involved.").  Because plaintiff has failed to state facts that constitute the infringement of another

9    recognized constitutional right, his claims against these defendants must be dismissed.  As this is

10   plaintiff's third unsuccessful attempt to state a claim against these defendants, the Court will

11   recommend that this dismissal be without leave to amend.

12           Based on the foregoing, IT IS HEREBY ORDERED that:

13           1.  The June 18, 2014 hearing on defendants' motions to dismiss (ECF Nos. 21-23) is

14               vacated;

15           2.  Plaintiff's June 2, 2014 motion for service of complaint (ECF No. 27) is denied; and

16           IT IS HEREBY RECOMMENDED that:

17           1.  Frontier Adjusters' May 12, 2014 motion to dismiss (ECF No. 21) be granted;

18           2.  Hilts and Evergreen's May 12, 2014 motion to dismiss (ECF No. 22) be granted;

19           3.  Shariat's May 14, 2014 motion to dismiss (ECF No. 23) be granted; and

20           4.  This action be dismissed with prejudice.

21           These findings and recommendations are submitted to the United States District Judge

22   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

23   after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties.  Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

26   within the specified time may waive the right to appeal the District Court's order.  Turner v.

27   ////

28   ////

1   <u>Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir.

2   1991).

3   DATED: June 17, 2014

4

5   ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28